IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KRISTYN DAWSON, an individual,

    Plaintiff,

  v.

BANK OF NEW YORK MELLON, a Delaware corporation; BANK OF AMERICA, N.A. and its subsidiaries including aka Bank of America Loan Servicing, LP, Countrywide Financial Corporation, and Countrywide Home Loans, Inc.; DITECH FINANCIAL, LLC as successor by merger to Green Tree Servicing LLC,

    Defendants.

No. 3:16-cv-01427-HZ

OPINION & ORDER

//

OPINION & ORDER - 1

Terry Scannell
7128 SW Gonzaga St. #220
Portland, Oregon 97223

    Attorney for Plaintiff

James Laurick
Kilmer, Voorhees & Laurick, P.C.
732 NW 19th Avenue
Portland, Oregon 97209

    Attorney for Defendant Bank of America, N.A.

HERNÁNDEZ, District Judge:

    Plaintiff, Kirstyn Dawson, brings this action against Defendants The Bank of New York Mellon ("BONYM"), Bank of America, N.A. ("BANA"), and Ditech Financial, LLC ("Ditech"), challenging their right to foreclose on her home and their treatment of her loan modification applications. Plaintiff asserts four claims. First, she seeks declaratory relief voiding her deed of trust ("DOT") and an order preventing non-judicial foreclosure on her property. Second, she asserts that BANA and Ditech intentionally interfered with her economic relationships with the beneficiaries of the DOT and promissory note ("Note"). Third, Plaintiff asserts that all Defendants violated the Oregon Unfair Trade Practice Act ("OUTPA") in the loan modification process. Finally, she asserts a claim for breach of the implied covenant of good faith and fair dealing against all Defendants. BANA now moves to dismiss Plaintiff's claims against all Defendants.

BACKGROUND

    The facts below are taken from Plaintiff's Complaint and judicially-noticed documents.[1] On July 25, 2005, Plaintiff took out a $288,000 loan on her property located in Sandy, Oregon. Compl. ¶ 6, ECF 1. The DOT designated America's Wholesale Lender ("AWL") as the Lender,

---

[1] The Court previously granted Defendants' request to judicially notice certain documents relating to Plaintiff's claims. August 25, 2016, Minute Order, ECF 45.

OPINION & ORDER - 2

Ticor Title as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary of the security instrument. Laurick Decl. Ex. A, 1, ECF 44. In 2009, Plaintiff contacted BANA, the servicer of her loan, because her loan's interest rate was set to increase. Compl. ¶ 9. Plaintiff was unable to refinance her loan with BANA and fell behind in making her loan payments for the first half of 2010. Id. at ¶ 10–11. In late 2010, BANA sent a foreclosure notice to Plaintiff but she was able to bring the loan current by cashing out her 401(k). Id. at ¶ 12. Once more, Plaintiff was unable to modify her loan, she fell behind in making her payments, and BANA sent her a notice of foreclosure in August of 2011. Id. at ¶ 13–14. BANA also denied Plaintiff's applications for alternative programs to avoid foreclosure. Id. At the same time, MERS made a recorded assignment of Plaintiff's Note and DOT to BONYM. Id. at ¶ 6.

Sometime in 2013, MERS made a second recorded assignment of the Note and DOT to BONYM. Compl. ¶ 6. In September of 2013, BANA informed Plaintiff that she might qualify for a modification and invited her to apply for one. Compl. Exh. 1, 1. Plaintiff applied and BANA denied her application. Compl. ¶ 18. BANA solicited Plaintiff again in 2014 for a different modification program and once more denied her application. Id. at ¶ 19. Additionally, in 2014 BONYM entered into an agreement with Green Tree Servicing LLC ("Green Tree") granting the latter power to foreclose on certain delinquent mortgages, including Plaintiff's loan. Id. at ¶ 20. Plaintiff applied for and was denied a loan modification with Green Tree. Id. at ¶ 22. Green Tree has subsequently become Defendant Ditech via merger. Id. at ¶ 5.

In March of 2016, Plaintiff received notice of a non-judicial foreclosure on her property with a sale date schedule for July 22, 2016. Compl. ¶ 16. The sale of her property has subsequently been cancelled during the course of this litigation. Plaintiff now seeks to invalidate

her DOT on several grounds, prevent foreclosure on her home, and obtain monetary relief for Defendants' alleged misconduct in the loan modification process.

## STANDARDS

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Additionally, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. A complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct." Id. at 679. In evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. Wilson v. Hewlett–Packard Co., 668 F.3d 1136, 1140 (9th Cir. 2012). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted). However, the court need not accept unsupported conclusory allegations as truthful. Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.

//
//
//

OPINION & ORDER - 4

DISCUSSION

**I.     Claim I: Declaratory Judgment**

Plaintiff makes two arguments supporting her requests for declaratory judgment: (1) AWL was not a valid legal entity; and (2) MERS was not the proper beneficiary of the DOT. BANA contests Plaintiff's first claim, arguing that AWL is merely an assumed business name of Countrywide Home Loans, Inc. ("Countrywide"), BANA's predecessor in interest. Second, BANA argues that MERS had the capacity to act on behalf of the DOT's beneficiary and alternatively, the DOT was valid notwithstanding it's designation of MERS as the beneficiary.

*A.     America's Wholesale Lender*

AWL was and continues to be a valid legal entity. Plaintiff argues that the DOT is void because AWL was a non-existent entity and not the true lender. Under Oregon law, a business entity is permitted to do business under an assumed business name. Or. Rev. Stat. ("O.R.S.") § 648.005(1)(a). Plaintiff urges the Court not to consider documents outside of the Note and DOT to determine the identity of the true lender at this stage in the case. However, the Court previously took judicial notice of three documents: (1) the DOT; (2) the Business Entity Data for AWL from the Oregon Secretary of State; and (3) the Business Entity Date for Countrywide from the same source. See Def. BANA's RJN, ECF 40; August 25, 2016, Minute Order. These documents demonstrate that AWL is an assumed business name of Countrywide and that AWL has been registered with the Oregon Secretary of State since 1995. Def. BANA's RJN, Ex. B.

Indeed, other courts have considered the same question and concluded that the fact that AWL is Countrywide's assumed business name cannot be disputed. Tyshkevich v. Wells Fargo Bank, N.A., No. 2:15-cv-2010 JAM AC (PS), 2016 WL 193666, at *10 (E.D. Cal. Jan. 15, 2016) (recognizing that AWL is a fictitious business name for Countrywide), report and

recommendation adopted, No. 2:15-cv-2010 JAM AC (PS), 2016 WL 1162687 (E.D. Cal. Mar. 24, 2016); Bashore v. Bank of Am., No. 4:11cv93, 2012 WL 629060, at *3 (E.D. Tex. Feb. 27, 2012) (holding that Countrywide "filed an assumed name certificate for [AWL] three years before Plaintiff signed the mortgage documents here. The Court finds that such filing was sufficient under Texas law") (internal citation omitted), report and recommendation adopted, No. 4:11CV93, 2012 WL 1080864 (E.D. Tex. Mar. 30, 2012); Roberts v. Am.'s Wholesale Lender, No. 2:11-CV-597-DB-SA, 2012 WL 1379203, at *3–4 (D. Utah Mar. 22, 2012) (also recognizing that AWL is Countrywide's trade name and rejecting plaintiff's conclusory allegations to the contrary), report and recommendation adopted, No. 2:11-cv-597, 2012 WL 1390188 (D. Utah Apr. 18, 2012), aff'd, 525 F. App'x 675 (10th Cir. 2013).

The Court fails to see how Plaintiff can plausibly allege that AWL "never existed" while simultaneously borrowing money from it. Pl. Resp. 5; Compl. ¶ 6. When analyzing the same argument, a Texas trial court stated that the plaintiff did not deny "that this 'non-existent' lender advanced him $119,000 to help purchase the real property that is the subject of the mortgage. Moreover, Plaintiff admits that he owes the debt." Sparks v. The Bank of New York Mellon, No. H-14-813, 2015 WL 4093944, at *3 (S.D. Tex. July 7, 2015). Here too, Plaintiff does not deny that AWL advanced her $288,000 to purchase her property. Compl. ¶ 6. Nor does she deny that she owes the debt. Id. at ¶¶ 6–25. Plaintiff's allegation that AWL was not a valid legal entity fails to support a plausible claim and BANA's motion to dismiss Claim I as to AWL is granted. Compl. ¶ 28.E.

### B. MERS

Plaintiff seeks to invalidate the DOT and the non-judicial foreclosure sale on her property on the grounds that MERS is not a valid beneficiary of the loan and its assignments as such were

OPINION & ORDER - 6

invalid. Compl. ¶¶ 6, 28.C. BANA argues that the DOT is valid even if MERS was not the proper beneficiary. Plaintiff has plead a plausible claim for relief on this basis and BANA's motion to dismiss as to Claim I as to MERS is therefore denied.

Under Oregon law, MERS cannot be the beneficiary of a DOT. "For purposes of ORS 86.735(1), the 'beneficiary' is the lender to whom the obligation that the trust deed secures is owed or the lender's successor in interest. Thus, an entity like MERS, which is not a lender, may not be a trust deed's 'beneficiary,' unless it is a lender's successor in interest." Brandrup v. ReconTrust Co., 353 Or. 668, 689, 303 P.3d 301, 312 (2013). The DOT here states, "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this security instrument." Laurick Decl., Ex. A, 1. Under the "Transfer of Rights in the Property" heading of the DOT, it states that the security instrument "secures to lender" the rights of repayment of the loan, all modifications of the Note, and performance of Plaintiff's covenants and agreements under the DOT and the Note. Id. at 2.

The Oregon Supreme Court sitting *en banc* analyzed the same DOT language regarding MERS and concluded that the true beneficiary of the DOT is the designated Lender, not MERS. Niday v. GMAC Mortg., LLC, 353 Or. 648, 659, 302 P.3d 444, 450 (2013). The Niday court held that MERS cannot be the beneficiary because the right of repayment and other covenants are secured to the Lender. Id. at 659, 302 P.3d at 450 ("A 'beneficiary' for purposes of the OTDA is the person to whom the obligation that the trust deed secures is owed. At the time of origination, that person is the lender."). Therefore, the beneficiary in this case was the designated Lender in the DOT: AWL. AWL is the assumed business name of Countrywide and Countrywide's successor in interest is BANA. Compl. ¶ 4. Thus, BANA is likely the DOT's designated beneficiary as Countrywide's ultimate successor in interest. "It follows that, because

MERS is neither the trustee nor the beneficiary, it holds no interest at all in the lien conveyed by the trust deed." Bandrup, 353 Or. at 703, 303 P.3d at 320; see also Roisland v. Flagstar Bank, FSB, 989 F. Supp. 2d 1095, 1103–04 (D. Or. Nov. 13, 2013) (holding that the holder of the beneficial interest of the DOT was the lender, not MERS). "Because MERS does not qualify as the beneficiary, an assignment in such capacity is invalid." Bandrup, 353 Or. at 707, 303 P.3d at 322; ORS 86.705(2); 86.735(1). Consequently, MERS's assignments of the DOT to BONYM are likely invalid.

Alternatively, BANA argues that even if the assignments from MERS are invalid, MERS could have validly acted as the true beneficiary's agent. Def. Mot. to Dismiss, 9. "[E]ven if MERS lacks authority to act as the trust deed's beneficiary, it may have authority to act *on behalf of* the beneficiary if it can demonstrate that it has an agency relationship with the beneficiary and that the agency agreement is sufficiently expansive." Niday, 353 Or. at 664, 302 P.3d at 453. MERS's capacity as the beneficiary's agent "depends on who succeeded to the lender's rights, whether those persons manifested consent that MERS act on their behalf and subject to their control, and whether MERS has agreed to so act." Id. Here, the record is undeveloped as to MERS's potential status as the beneficiary's agent and thus it is plausible that MERS did not have the authority to act on the beneficiary's behalf. BANA's argument on this ground therefore fails.

Finally, BANA argues that "BONYM's status as beneficiary derives not from any assignment of the DOT but from its status as note-holder." Def. Mot. to Dismiss, 9. Under Oregon law, "when a promissory note changes hands the beneficial interest in a deed of trust securing that promissory note 'follows the promissory note that it secures' by operation of law." Roisland, 989 F. Supp. 2d at 1103 (quoting Bandrup, 353 Or. at 694, 303 P.3d at 315). If

BONYM is the valid Note-holder, then it "also became the holder of the beneficial interest in the deed of trust securing that note by operation of law." Id. (citing Niday, 353 Or. at 660–662, 302 P.3d at 451–452).

Plaintiff alleges MERS assigned the Note and DOT to BONYM and that BONYM is the Note holder. Compl. ¶¶ 6, 30. As discussed above, however, MERS does not qualify as a beneficiary as to the DOT and its assignments as such are invalid. If BONYM is the Note-holder then it "possesse[s] the right to appoint a successor trustee and to take all of the other actions necessary to initiate the non-judicial foreclosure." Romani v. Nw. Tr. Servs., Inc., No. 3:11-CV-0382-PA, 2013 WL 6530583, at *2–3 (D. Or. Dec. 12, 2013), aff'd sub nom. Romani v. Wells Fargo Bank, N.A., No. 14-35018, 2016 WL 4120699 (9th Cir. Aug. 3, 2016). However, the Note has not been submitted to the Court and the record is insufficient to support granting dismissal on this claim on this basis. See Niday, 353 Or. at 665, 302 P.3d at 453–54 (reversing the trial court's grant of summary judgment where the identity of the note-holder and its relationship with MERS were not sufficiently established).

In sum, Plaintiff has alleged a plausible claim for declaratory relief on the grounds that MERS was not the proper beneficiary of the DOT and it did not have the authority to make assignments or appoint a substitute trustee to conduct the non-judicial foreclosure. Compl. ¶ 28.C.

## II. Claim II: IIER

Plaintiff alleges that BANA and Ditech intentionally interfered with her economic relationships with the "beneficiaries of the Note and Deed of Trust." Compl. ¶¶ 29–38. To make out a valid IIER claim, Plaintiff must allege:

> (1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic

OPINION & ORDER - 9

>advantage, (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

McGanty v. Staudenraus, 321 Or. 532, 535, 901 P.2d 841, 844 (1995). The core of Plaintiff's IIER claim is that BANA and Ditech interfered with Plaintiff's attempts to modify her mortgage in order to generate fees at the expense of the Note and DOT beneficiaries' investment. In other words, Plaintiff alleges that she and the Note and DOT beneficiaries have a mutual economic interest in the continuation of her mortgage that BANA and Ditech interfered with.

As to BANA, the "third party" element has not been met regarding the beneficiary of the DOT. Consistent with the discussion above, BANA is likely the beneficiary of the DOT. Plaintiff alleges, in relevant part, that BANA is interfering with her relationship with the beneficiary of the DOT. It stands to reason then, that BANA cannot be a third party interfering in its own relationship with Plaintiff. Insofar as Plaintiff's Complaint alleges that BANA interfered in its own economic relationship with Plaintiff, the Complaint fails. To the extent that Plaintiff asserts that BANA interfered with Plaintiff's economic relationship with another entity, however, Plaintiff has stated a plausible claim. Consequently, the Court denies BANA's motion to dismiss Claim II regarding BANA because it is plausible that other entities may be the beneficiaries of the DOT and Note.

The Court finds that Plaintiff has otherwise pleaded a plausible claim for IIER and denies BANA's motion to dismiss. On a motion to dismiss, the Court must accept the allegations from the Complaint as true and construe them in the light most favorable to the non-moving party. Wilson, 668 F.3d at 1140. Defendants challenge the existence of a shared "prospective economic advantage" between Plaintiff and the beneficiaries of the Note and DOT in providing her with a loan modification. Def. Mot. to Dismiss, 10–11. BANA argues "[w]hether modifying a loan

OPINION & ORDER - 10

would be in the best interest of the beneficiary of the Note and [DOT] would depend entirely upon the terms of the specific modification in question." Id. at 11. The terms of a particular modification are not dispositive of the issue of whether Plaintiff and the beneficiaries had a "mutual prospective economic advantage in utilizing loss mitigation assistance programs." Compl. ¶ 32. Assuming that the mutual economic advantage existed in the continuation of Plaintiff's mortgage, Plaintiff has alleged a plausible claim that BANA and Ditech intentionally mishandled her modification applications to generate increased fees. As a result of the alleged interference, Plaintiff stated that she was unable to avail herself of a loan modification and suffered serious financial consequences associated with the default on her loan. Compl. ¶¶ 37–38. The Complaint contains sufficient factual allegations to support a plausible IIER claim and BANA's motion to dismiss Claim II is denied.

### III.   Claim III: OUTPA Violation

BANA argues that Plaintiff's OUTPA claim fails because she does not cite to specific conduct to support her conclusory allegations. Def. Mot. to Dismiss, 12–13. BANA argues that Plaintiff provides no support for the following statements that BANA and Ditech "lacked any financial incentive to modify the loans of homeowners" and "induced the Plaintiff to believe that there were no workable loan modification programs available to them." Id. To make out a valid OUTPA claim, Plaintiff must allege that Defendants engaged in an unlawful practice. See O.R.S. 646.608(1)(u); Or. Admin. R. ("O.A.R.") § 137-020-0805(3), (6) (defining unlawful practices under OUTPA which includes unfair or deceptive conduct such as material misrepresentations regarding loan modification and dealing with the borrower in bad faith).

Regarding Defendants' alleged lack of financial incentives, the Court agrees that Plaintiff has not plead sufficient facts in her Complaint to support this allegation. Notwithstanding this

deficiency, Plaintiff alleged sufficient facts to support her claim that BANA and Ditech induced her into believing that there were no loan modifications available to her. Plaintiff alleged several instances where BANA and Ditech rejected her loan modification attempts. Compl. ¶¶ 10–22. Plaintiff also alleged several forms of misconduct regarding the mishandling of her modification applications. Compl. ¶ 34. These allegations are sufficient to sustain Plaintiff's OUTPA claim. See O.R.S. 646.608(1)(u); O.A.R. 137-020-0805(3), (6).

BANA also argues that Plaintiff's OUTPA claim is barred by the statute's one year limitations period. O.R.S. 646.638(6). This argument was raised for the first time in BANA's Reply and Plaintiff has not had an opportunity to respond to it. Arguments made for the first time in a reply are improper and the Court has discretion whether to entertain such arguments. Weaving v. City of Hillsboro, No. 10-CV-1432-HZ, 2012 WL 526425, at *15 n.5 (D. Or. Feb. 16, 2012). Accordingly, the Court will not address Defendants' new argument raised in their Reply. Id. Because Plaintiff has otherwise plead a plausible OUTPA claim, BANA's motion to dismiss Claim III is denied.

**IV.    Claim IV: Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiff claims that Defendants breached the duty of good faith and fair dealing "implied in every agreement" by mishandling Plaintiff's modification application and demanding paperwork. Compl. ¶¶ 47–48. Oregon law "imposes a duty of good faith and fair dealing in the performance and enforcement of every contract. That duty serves to effectuate the objectively reasonable expectations of the parties." Hampton Tree Farms, Inc. v. Jewett, 320 Or. 599, 615, 892 P.2d 683, 693 (1995). The obligation of good faith and fair dealing exists only if there is an enforceable contract and it does not vary the substantive terms of the agreement. Pac. First Bank v. New Morgan Park Corp., 319 Or. 342, 352–53, 876 P.2d 761, 767 (1994).

Plaintiff concedes that there is no provision in the Note or DOT "stating that a borrower will be reviewed for a loan modification if they default on their payments." Pl. Resp., 11–12. Notwithstanding that concession, Plaintiff argues that a provision in DOT stating that the Lender can "accept payments for less than the total payment" taken with oral representations by BANA that it had opted to modify the payments gave rise to the implied duty of good faith and fair dealing. Pl. Resp., 12.

Plaintiff has not plead sufficient factual content to support her claim that an enforceable contract to modify her loan existed. As previously stated, the Court judicially noticed the DOT. The DOT does not contain the provision that Plaintiff claims. Plaintiff's misstatement of the DOT's terms is not fatal to her claim as other provisions state that the Lender may accept partial payment. Those provisions alone are insufficient, however, to support a claim that an agreement existed between the parties to modify Plaintiff's loan upon her default. See Davis v. Pacific Saw & Knife Co., No. CV-08-676-HU, 2008 WL 4319981, at *2 (D. Or. Sept. 16, 2008) (holding that in the absence of an express contract between the plaintiff and the defendant, a plaintiff cannot bring a claim for breach of the covenant of good faith and fair dealing). Consequently, Defendants did not owe Plaintiff an implied duty of good faith and fair dealing as she claims.

Plaintiff did not include allegations of BANA's oral representations in the Complaint and requests leave to amend her claim to include them. Pl. Resp., 12. Defendants argue that Plaintiff's request for leave to amend should be denied because oral representations made by BANA are barred under the statute of frauds. Under Oregon law, "'[a]n agreement, promise or commitment to lend money,' is only valid where the agreement 'or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged. . . .'" Walchli v. Cmty. Bank, No. CIV.09-359-AC, 2010 WL 2164874, at *8 (D. Or.

OPINION & ORDER - 13

Mar. 16, 2010) (quoting O.R.S. 41.580(1)(h) (2007), report and recommendation adopted in part, No. CV 09-359-AC, 2010 WL 2105163 (D. Or. May 25, 2010), aff'd, 433 F. App'x 543 (9th Cir. 2011). In this case, BANA's oral statements that Plaintiff seeks leave to allege purportedly modify the terms of her mortgage and are subject to the statute of frauds. Plaintiff's request to amend her Complaint to include these oral representations is denied as futile. The Court grants BANA's motion to dismiss this claim.

## CONCLUSION

BANA's motion to dismiss [48] is granted in part. As to Claim I: BANA's motion is granted with respect to Plaintiff's requests for declaratory relief on the grounds that AWL is not a valid legal entity; the Motion regarding MERS's status as the DOT's beneficiary is denied. As to Claim II, BANA's motion regarding Plaintiff's IIER claim is denied. As to Claim III, BANA's motion regarding Plaintiff's OUTPA claim is denied. As to Claim IV, BANA's motion is granted on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing and the claim is dismissed with prejudice. Plaintiff's request for leave to amend Claim IV is denied.

Dated this 13 day of December, 2016.

MARCO A. HERNÁNDEZ
United States District Judge